**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------×
DORCAS MENDEZ,

                  *Plaintiff,*                         **19 CV 660**

     *v.*

                                                **COMPLAINT**

HCMC LEGAL, INC., *and* HC2, INC.*, d/b/a* HIRE
COUNSEL,

                *Defendants.*
-----------------------------------------------------------------------×

       Plaintiff Dorcas Mendez, by her counsel, The Harman Firm, LLP, alleges for her

Complaint against Defendants HCMC Legal, Inc., and HC2, Inc., d/b/a Hire Counsel

(collectively "HCMC") as follows:

**PRELIMINARY STATEMENT**

       1.     On April 18, 2005, HCMC hired Ms. Mendez, who is epileptic, as an

Administrative Assistant.  For most of her employment, Ms. Mendez's condition did not affect

her work.  In fact, during her 12-year employment, HCMC promoted Ms. Mendez on several

occasions: to Administrative Coordinator in 2007 and again in 2012 to the position of Executive

Assistant and Administrative Coordinator.  On March 26, 2018, however, HCMC relocated her

to the lobby, which had seizure-triggering lighting.  Ms. Mendez explained that working in the

lobby would likely trigger a seizure, yet HCMC refused to accommodate Ms. Mendez in any

way whatsoever: she could sit at the front desk and suffer from a seizure or take paid time off

("PTO"), giving her no choice but to take multiple vacation days.

       2.     Upon her return to work, the new Chief Executive Officer demoted Ms. Mendez

from her previous position as Executive Assistant to Receptionist.

3.      On May 28, 2018, HCMC received Ms. Mendez's EEOC charge, which she had filed on April 6, 2018, and immediately began retaliating against Ms. Mendez.  Less than two months later, HCMC terminated Ms. Mendez's employment.  According to the Vice President of Human Resources and Administration, Ms. Mendez's termination was due to "financial restructuring of company."  Yet, in this purported "restructuring," HCMC only terminated a few employees, most of whom were older, including Mary Wenze (60-years old) and Kimberly Neufeld (in her 60s).

4.      Ms. Mendez seeks damages and costs against Defendants for interfering with her rights under the Family and Medical Leave Act ("FMLA") 42 U.S.C. §§ 12101 *et seq*., by failing to provide her with notice of her rights under the FMLA.

5.      Ms. Mendez also seeks damages and costs against Defendants for discriminating against her based on her disability (seizure disorder) by denying her a reasonable accommodation and terminating her employment in retaliation, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq*.

6.      Ms. Mendez also seeks damages and costs against Defendants for discriminated against her based on her age (62) and gender by wrongfully terminating her employment (along with other similarly-aged women), in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*., Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., and the NYCHRL.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

7.      Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under Title VII, the ADEA, the ADA, and the FMLA.

2

8.      Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

9.      All conditions precedent to maintaining this action have been fulfilled.  A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Right-to-Sue letter dated November 19, 2018, relating to the discriminatory acts described in this Complaint.  This action was properly instituted within 90 days of the issuance of the Right-to-Sue letter.

## TRIAL BY JURY

10.     Plaintiff respectfully requests a trial before a jury.

## PARTIES

11.     Plaintiff, at all times relevant hereto, was and is a resident of Kings County in the State of New York.

12.     Upon information and belief, at all times relevant hereto, Defendants were and are corporations organized under the laws of the State of New York with their principal place of business located at 360 Lexington Ave, Suite 1100 New York, New York 10017.

## COVERAGE UNDER THE FMLA

13.     To be eligible under the FMLA, an employer must be engaged in commerce, or in any industry or activity affecting commerce, and employ 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year.

14.     To be eligible for leave under the FMLA, an employee must have been employed (i) for at least 12 months by the employer, and (ii) for at least 1,250 hours of service with such employer during the previous 12–month period.

3

15.     At all relevant times, HCMC was an enterprise engaged in commerce and had employed more than 50 individuals in the preceding calendar year.

16.     At all relevant times, Ms. Mendez had been employed at HCMC for over 12 months and had worked at least 1,250 hours for HCMC in the previous 12-month period.

17.     Ms. Mendez's epilepsy constituted a qualifying event under the FMLA.

18.     As an eligible employee, Ms. Mendez was therefore entitled under the FMLA to 12 work weeks of leave in a 12–month period.

## STATEMENT OF FACTS

19.     On April 18, 2005, HCMC hired Ms. Mendez as an Administrative Assistant. During her 12-year tenure at HCMC, Ms. Mendez was a dedicated employee who consistently fulfilled her job responsibilities and received multiple promotions.

20.     Tellingly, HCMC promoted Ms. Mendez to Administrative Coordinator in 2007 and again in 2012 to the position of Executive Assistant and Administrative Coordinator.

21.     Ms. Mendez suffers from a seizure disorder and, as a result, cannot be in a room with seizure triggering-lights.

22.     For most of her employment, her condition did not affect her work, as Ms. Mendez worked in a cubicle and never in a room with any problematic lighting.

23.     On March 26, 2018, however, HCMC's Office Manager, Iva Tyrell, informed Ms. Mendez that the new Chief Executive Officer, Joan Davison, through Joseph Scotto, the Vice President of Human Resources and Administration, was instructing the IT Department to relocate Ms. Mendez to the front desk in the lobby immediately.

24.     Shocked by HCMC's effective demotion her without reason or warning, Ms. Mendez told Ms. Tyrell that working in the lobby (where the lights were seizure-triggering) would be incredibly dangerous and detrimental to her health.

25.     Ms. Tyrell relayed this information to Mr. Scotto, yet HCMC refused to accommodate Ms. Mendez, despite the fact that moving her would cause her grave health consequences.

26.     Ms. Mendez approached Mr. Scotto to explain her situation: "I hate to share this information, but I have a condition…"—but before she could continue, Mr. Scotto interrupted her and said, "Then don't share."

27.     Ms. Mendez pressed on and told him that she was epileptic.

28.     Mr. Scotto didn't respond, effectively ending Ms. Mendez's attempt to identify a reasonable accommodation.

29.     On April 2, 2018, Ms. Mendez met with her doctor, Dr. Deborah Sonenblick, who advised Ms. Mendez to remain at her usual work station—where Ms. Mendez had been positioned for the last three years without issue—until she could send HCMC the note.

30.     On April 3, 2018, Ms. Mendez sent Mr. Scotto an email stating that, per her doctor's advice, she would work at her cubicle until Dr. Sonenblick sent HCMC the doctor's note.

31.     Upon receiving this email, Mr. Scotto interrupted Ms. Mendez's work, asking her why she was not sitting in the front lobby and requested her doctor's note.

32.     Ms. Mendez repeated the content of her email to Mr. Scotto: she was sitting at her usual desk under advice from her doctor and that her doctor would be sending a letter shortly.

33.    Mr. Scotto, however, disregarded Ms. Mendez's health concerns once again and demanded she sit at the front desk or take PTO, giving her no choice but to take multiple vacation days or suffer from a seizure.

34.    At no point did anyone at HCMC inform Ms. Mende of her rights under the FMLA, even though they knew she had a serious medical condition.

35.    Confused, Ms. Mendez again tried to explain why she could not move to the front without proper accommodation; in response, Mr. Scotto told Ms. Mendez she was "insubordinate."

36.    Ms. Mendez started her PTO that same day, April 3, 2018.

37.    On April 9, 2018, Dr. Sonenblick sent in the promised doctor's note, which confirmed what Ms. Mendez had already told HCMC:

> This letter is in reference to Dorcas Mendez Rivera who has been under my care for more than 12 years. Dorcas has a seizure disorder which has been well controlled until recently.  Since moving her desk, she has had a number of auras and pre seizures.  Bright lights, over head, flickering lights, and reflective lights are known triggers for her seizures.  She must be moved immediately to an area without bright overhead lights, as she is at risk for a full seizure.  This is a medical necessity.

38.    On April 6, 2018, Ms. Mendez filed a charge against HCMC with the EEOC, in which she stated that HCMC had discriminated against her based on her disability.

39.    On April 16, 2018, Ms. Mendez returned to work from her PTO.

40.    HCMC had removed the problematic lights from the receptionist area, allowing Ms. Mendez to work there safely.

41.    Upon her return, however, Ms. Davison demoted Ms. Mendez from her previous position as Executive Assistant to Receptionist.

42.    Not only had Ms. Davison moved Ms. Mendez to the receptionist area, but now tasked her solely with receptionist duties.

43.     Ms. Tyrell informed Ms. Mendez that answering the switchboard and doorbell—receptionist tasks Ms. Mendez had not been responsible for in the past 12 years as either an Executive Assistant or Administrative Coordinator—were now essential and daily parts of Ms. Mendez's job responsibilities.

44.     Moreover, Ms. Mendez could not freely leave the front desk without informing Ms. Tyrell or Mr. Scotto, for reasons including using the bathroom, going to lunch, meeting with office colleagues on projects, scanning documents, and obtaining signatures for travel, expenses or contract approval from the CFO.

45.     On May 28, 2018, HCMC received Ms. Mendez's EEOC charge and immediately began retaliating against Ms. Mendez.

46.     For example, Ms. Tyrell sent Ms. Mendez an email, telling her that she was no longer the backup person for credentialing, and Ms. Mendez witnessed HCMC management direct other employees to complete Ms. Mendez's job responsibilities.

47.     On July 20, 2018, Stephanos Zannikos, HCMC's General Counsel, and Mr. Scotto terminated Ms. Mendez's employment.

48.     According to Mr. Scotto, Ms. Mendez's termination was due to "financial restructuring of company" and the company "couldn't support two administrators," referring to Ms. Tyrell.

49.     Mr. Scotto, however, retained Ms. Tyrell, who was 34-years old at the time and had only been at the company for three years.

50.     Furthermore, HCMC terminated Ms. Mendez without speaking to her direct supervisor, assessing her abilities, or comparing her and Ms. Tyrell's job performance in the slightest.

51.     HCMC discriminated against Ms. Mendez based on age when it arbitrarily favored her younger co-worker.

52.     Moreover, in this purported "restructuring," HCMC terminated mostly older employees, including Mary Wenze (60-years old) and Kimberly Neufeld (in her 60s).

53.     In reality, when relocating Ms. Mendez and first finding out about her seizure condition, HCMC effectively forced Ms. Mendez to use her vacation days rather than allow her to stay in the same location as she had been for the past three years.

54.     Ms. Mendez reported this disability discrimination to the EEOC and two months after HCMC received the EEOC charge, it terminated Ms. Mendez, a 12-year employee.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Interference in Violation of the FMLA**

55.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 54 with the same force as though separately alleged herein.

56.     The FMLA prohibits an employer from denying or otherwise interfering with an employee's rights under the FMLA or otherwise retaliating against an employee for exercising their FMLA rights.

57.     At all relevant times, Plaintiff was an eligible employee within the meaning of the FMLA, and Defendants were an employer as defined in the FMLA.

58.     Plaintiff was entitled under the FMLA to 12 workweeks of leave due to her serious health condition.

59.     Plaintiff gave notice to Defendants of her serious health condition and need for leave.

60.     As such, Defendants were required under the FMLA to notify Plaintiff of her rights under the FMLA.

61.     Defendants interfered with Plaintiff's exercise of her FMLA-protected rights by failing to notify her of her entitlement to take leave under the FMLA, resulting in Plaintiff using vacation days.

62.     As such, Defendants have violated the FMLA.

63.     As a direct and proximate consequence of Defendants' FMLA interference, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## SECOND CAUSE OF ACTION
### Failure to Accommodate in Violation of the ADA

64.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 63 with the same force as though separately alleged herein.

65.     The ADA requires an employer to engage in an interactive process to identify reasonable accommodations for an otherwise qualified employee with a disability.

66.     Defendants violated the ADA when they refused to grant Plaintiff's request for a reasonable accommodation for her disability and failed to engage in the mandatory interactive process to provide a reasonable accommodation for Plaintiff's disability.

67.     As a direct and proximate consequence of Defendants' failure to accommodate her disability, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

68.     Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### Wrongful Termination in Violation of the ADA

69.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

70.     The ADA prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of disability.

71.     Defendants discriminated against Plaintiff on the basis of her disability by terminating her employment based on her disability.

72.     As such, Defendants have violated the ADA.

73.     As a direct and proximate consequence of Defendants' disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

74.     Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of the ADA

75.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 74 with the same force as though separately alleged herein.

76.     The ADA prohibits an employer from retaliating against an employee because that employee has "opposed any act or practice" made unlawful under the ADA.

77.     Plaintiff engaged in protected activity under the ADA when she complained to Defendants about discriminatory treatment unlawful under the ADA.

78.     Defendants violated the ADA when it retaliated against Plaintiff for her complaints about discrimination by terminating her employment.

79.     As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Failure to Accommodate in Violation of the NYCHRL**

80.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 79 with the same force as though separately alleged herein.

81.     The NYCHRL requires an employer to make a reasonable accommodation to enable an employee with a disability to satisfy the essential requisites of a job, provided that the disability is known or should have been known to the employer.

82.     At all relevant times, Plaintiff was an individual with a disability within the meaning of the NYCHRL.

83.     Defendants were fully aware of Plaintiff's disability, as Plaintiff notified Defendants of her disability and requested related reasonable accommodations.

84.     Defendants refused to grant Plaintiff's requests for a reasonable accommodation for her disability and failed to engage in the mandatory interactive process to provide a reasonable accommodation for Plaintiff's disability.

85.     As such, Defendants have violated the NYCHRL.

86.     As a direct and proximate consequence of Defendants' failure to accommodate her disability, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

87.     Defendants' discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## SIXTH CAUSE OF ACTION
### Wrongful Termination in Violation of the NYCHRL

88.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 87 with the same force as though separately alleged herein.

89.     The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of her age and disability.

90.     Defendants violated the NYCHRL when they terminated Plaintiff's employment based on her age and disability.

91.     As a direct and proximate consequence of Defendants' age and disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

92.     Defendants' discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## SEVENTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

93.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 92 with the same force as though separately alleged herein.

94.     The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

95.     Plaintiff engaged in protected activity under the NYCHRL when she properly complained to Defendants about disability discrimination unlawful under the NYCHRL.

96.     Defendants retaliated against Plaintiff by terminating her employment.

97.     As such, Defendants have violated the NYCHRL.

98.     As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

<u>**REQUEST FOR RELIEF**</u>

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.  For the first cause of action, economic loss, liquidated damages, attorneys' fees and costs, and interest to be determined at the hearing of this action;

B.  For the second cause of action, economic loss, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the hearing of this action;

C.  For the third cause of action, economic loss, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the hearing of this action;

D.  For the fourth cause of action, economic loss, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the hearing of this action;

E.  For the fifth cause of action, economic loss, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the hearing of this action;

F.  For the sixth cause of action, economic loss, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the hearing of this action;

G.  For the seventh cause of action, economic loss, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the hearing of this action; and

H.  For such other and further relief as the Court deems just and proper.

Dated: New York, New York
         January 23, 2019

                                        By:    /Edgar M. Rivera_____
                                               Walker G. Harman, Jr. [WH-8044]
                                               Edgar M. Rivera [ER-1378]
                                               THE HARMAN FIRM, LLP
                                               381 Park Avenue South, Suite 1220
                                               New York, NY 10016
                                               T: (212) 425-2600
                                               E: wharman@theharmanfirm.com
                                               E: erivera@theharmanfirm.com

                                               *Attorneys for Plaintiff*

14